# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

JUAN IGNACIO LOPEZ,

                Petitioner,

    v.

S.M. SALINAS, Warden

                Respondent.

_____/

1:10-cv-02325-DLB (HC)

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DIRECTING CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF RESPONDENT, AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

[Doc. 1]

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge.  Local Rule 305(b).

<u>RELEVANT HISTORY</u>

Following a jury trial in the Madera County Superior Court, Petitioner was conviction of one count of possession of methamphetamine for sale (Cal. Health & Safety Code § 11378) with an enhancement for having a prior conviction for the same offense (Cal. Health & Safety Code § 11370.2, subd. (a)), and the court found he violated probation.

On January 5, 2010, the California Court of Appeal, Fifth Appellate District affirmed the judgment.  The California Supreme Court denied review on March 10, 2010.

Petitioner filed the instant petition for writ of habeas corpus on November 23, 2010.  Respondent filed an answer to the petition on February 15, 2011.  Petitioner did not file a traverse.

1

1

<u>STATEMENT OF FACTS</u>[1]

2

Defendant, Juan Ignacio Lopez, was convicted after a jury trial of one
count of possession of methamphetamine for sale (Health & Saf. Code, [N.1] §
11378) with an enhancement of having a prior conviction for the same offense (§
11370.1, subd. (a)), and the court found he violated probation.  He was sentenced
to six years with an additional eight-month term for violating probation in his
previous felony case.

3

4

5

N. 1 All further statutory references are to the Health and Safety
Code unless otherwise indicated.

6

7

On appeal, defendant contends the court improperly instructed the jury
with CALCRIM No. 361 as to the defendant's failure at trial to explain or deny
evidence against him.  He also contends the prosecutor committed prejudicial
misconduct during her examination of the arresting officer, cross-examination of
defendant, and closing argument, and defense counsel was prejudicially
ineffective for failing to object.  We will affirm.

8

9

10

**FACTS**

11

On the evening of May 14, 2007, Los Banos Police Officer Cortez was on
foot patrol in an area known for frequent drug activity.  He was walking toward
the front yard of a duplex and encountered Francisco Monroy on the street.
Monroy shouted in Spanish that Cortez was approaching.  Cortez kept walking
toward the duplex and saw defendant standing inside the front yard fence.  Cortez
knew defendant from prior contacts, and he had arrested defendant for
methamphetamine sales in November 2005 when he found defendant in
possession of individually-wrapped bindles of methamphetamine. [N.2]

12

13

14

15

16

[N.2] The court granted the prosecution's request and took judicial
notice that defendant had a prior conviction for the sale of methamphetamine.

17

Officer Cortez testified that as he approached the front yard, defendant's
back was toward him and defendant was bending over "like he was attempting to
conceal something."  When defendant saw Cortez, he straightened up and walked
to the officer.  Cortez asked defendant if he could search his person and defendant
consented.  Cortez found defendant in possession of a cell phone and $740.  The
cash included seventeen $20 bills.

18

19

20

After searching defendant, Officer Cortez walked to the area of the yard
where defendant had been bending over.  Cortez found a plastic bag which
contained 12 individually wrapped baggies of methamphetamine.  Each baggie
weighed approximately .33 to .36 grams and could be sold on the street for $20
each, for a total street value of $240.  Cortez testified that as soon as he found the
narcotics, defendant "voluntarily" and "immediately" said "he was selling drugs
because he had a lot of bills and court fees."

21

22

23

24

25

Defendant was arrested and transported to the police department.  Cortez

26

27

[1] The following summary of facts are taken from the opinion of the California Court of Appeal, Fifth
Appellate District attached as an exhibit to the Answer to the Petition for Writ of Habeas Corpus.  The Court finds
the state Court of Appeal's summary is a correct and fair summary of the facts of the case.

28

advised defendant of his constitutional rights, defendant waived his rights, and Cortez conducted a tape-recorded interview.  Cortez asked defendant "if he had told me that he was selling narcotics to pay his bills and court fees, and he stated no."  Defendant told Cortez he never made that statement and denied he was selling drugs.  Defendant said the cash was from working in the fields.

**Defense Evidence**

Defendant testified at trial and admitted he previously pleaded guilty to possession of drugs and possession of drugs for sale.  Defendant testified he was a farm labor foreman, and he also earned money by driving laborers to work.  He drove six people to the fields "all over" the county on a daily basis, and they paid him $7 for gasoline.  Defendant testified he had $740 because he had recently been paid for both jobs.

Defendant testified that he had been walking in the area and stopped in the front yard to urinate and told Cortez what he was doing.  After Cortez searched him and found the cash, defendant asked Cortez "if he would take my money again because the other time he took away $2000 from me, and it was never returned to me."  Defendant testified he never told Cortez that he was selling drugs.  Defendant testified that when Cortez conducted the tape-recorded interview, defendant told him to turn off the tape-recorder "because the other time he had recorded me, and I was not selling anything, and I had told him that I had given it away to someone else, and he said that was sales."

On cross-examination, defendant was asked to identify his employers:

"Q. Who were you working for?"

"A. I worked with a man whose name was–I don't recall his name, but I have it on my check stubs.  It's a farm labor contractor.

"Q. And you don't recall his name?

"A. Because I wouldn't speak with him.  It was the other gentleman that would talk to me.  What's his name?  I don't recall the name."

Defendant had worked for that person over one year but he was not sure how many checks he received from that person.  On further questioning, defendant testified he spoke to "Benjamin" about his job, but he did not know the man's last name or telephone number.  Defendant testified "Benjamin" and "Nora" would tell him where to work, but he was unable to provide their last names and thought one person's name might be "Torres."  Defendant could not identify any ranches where he worked or drove the farm laborers and said there were "a lot of ranches."

Also on cross-examination, defendant acknowledged that Officer Cortez previously arrested him for selling drugs but denied telling Cortez that he was selling drugs at that time.  Defendant again claimed Cortez seized $2,000 from him during the earlier arrest, he insisted the cash was from work, and he denied the money was forfeited as drug proceeds.  As for the money in this case, defendant testified he had cashed paychecks for $460, he received the balance in cash from the farm laborers he drove to work, and laborers primarily paid him in $20 bills.

3

**Rebuttal**

Officer Cortez testified he previously arrested defendant for selling drugs at the same location where he arrested him in this case. Cortez was "100 percent positive" that when he arrested defendant in this case, defendant said he was selling drugs to pay his bills.

(People v. Lopez, No. F055895, 2010 Cal.App. Unpub. LEXIS 133, at *1-6 (Jan. 5, 2010).)

DISCUSSION

I.    Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Tulare County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), cert. denied, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), cert. denied, 520 U.S. 1107, 117 S.Ct. 1114 (1997), overruled on other grounds by Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II.    Standard of Review

Where a petitioner files his federal habeas petition after the effective date of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), he can prevail only if he can show that the state court's adjudication of his claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

4

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of [the Supreme] Court." Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 785 (2011) (citing 28 U.S.C. § 2254(d)(1) and Williams v. Taylor, 539 U.S. 362, 412 (2000). Habeas relief is also available if the state court's decision "involved an unreasonable application" of clearly established federal law, or "was based on an unreasonable determination of the facts" in light of the record before the state court. Richter, 131 S.Ct. 785 (citing 28 U.S.C. § 2254(d)(1), (d)(2)). "[C]learly established ... as determined by" the Supreme Court "refers to the holdings, as opposed to the dicta, of th[at] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. at 412. Therefore, a "specific" legal rule may not be inferred from Supreme Court precedent, merely because such rule might be logical given that precedent. Rather, the Supreme Court case itself must have "squarely" established that specific legal rule. Richter, 131 S.Ct. at 786; Knowles v. Mirzayance, __ U.S. __, 129 S.Ct. 1411, 1419 (2009). Moreover, the Supreme Court itself must have applied the specific legal rule to the "context" in which the Petitioner's claim falls. Premo v. Moore, __ U.S. __, 131 S.Ct. 733, 737 (2011). "A state court's determination that a claim lacks merits precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Richter, 131 S.Ct. at 786.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law. See Lambert v. Blodgett, 393 F.3d 943, 976-77 (2004).

Courts further review the last reasoned state court opinion. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991). However, "[w]here a state court's decision is unaccompanied by an

1 explanation, the habeas petitioner's burden still must be met by showing there was no reasonable

2 basis for the state court to deny relief." Richter, 131 S.Ct. at 784.

3 III.    Instructional Error

4    Petitioner contends jury instruction CALCRIM No. 361 denied him due process and a fair

5 trial.  The California Court of Appeal denied the claim in the last reasoned decision.

6    A challenge to a jury instruction solely as an error under state law does not state a claim

7 cognizable in a federal habeas corpus action.  See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991).

8 To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the

9 ailing instruction by itself so infected the entire trial that the resulting conviction violates due

10 process.  Id. at 72.  Additionally, the instruction may not be judged in artificial isolation, but

11 must be considered in the context of the instructions as a whole and the trial record.  Id.  The

12 court must evaluate jury instructions in the context of the overall charge to the jury as a

13 component of the entire trial process.  See United States v. Frady, 456 U.S. 152, 169 (1982)

14 (citing Henderson v. Kibbe,  431 U.S. 145, 154 (1977)).  Furthermore, even if it is determined

15 that the instruction violated the petitioner's right to due process, a petitioner can only obtain

16 relief if the unconstitutional instruction had a substantial influence on the conviction and thereby

17 resulted in actual prejudice under Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710

18 (1993) (whether the error had a substantial and injurious effect or influence in determining the

19 jury's verdict.). See Hanna v. Riveland, 87 F.3d 1034, 1039 (9th Cir. 1996).  The burden of

20 demonstrating that an erroneous instruction was so prejudicial that it will support a collateral

21 attack on the constitutional validity of a state court's judgment is even greater than the showing

22 required to establish plain error on direct appeal." Id.

23    In rejecting Petitioner's challenge to CALCRIM No. 361, the California Court of Appeal

24 stated:

25    Defendant raises several challenges to CALCRIM No. 361, which, as given to the
jury in this case, stated:

26

27    "If the defendant failed in his testimony to explain or deny evidence
against him and if he could reasonably be expected to have done so based on what
he knew, you may consider his failure to explain or deny in evaluating that

28 evidence.  Any such failure is not enough by itself to prove guilt.  The People

6

must still prove each element of the crime beyond a reasonable doubt.  If the defendant failed to explain or deny, it is up to you to decide the meaning and importance of that failure."

While defendant did not object to CALCRIM No. 361, a claim of instructional error in giving this instruction is subject to independent review on appeal.  (*People v. Rodriguez* (2009) 170 Cal.App.4th 1062, 1066 (*Rodriguez*).)

Defendant contends CALCRIM No. 361 violates his constitutional right to due process because it singles out a defendant's testimony for treatment markedly different from that of other witnesses.  CALCRIM No. 361 is similar in content to former CALJIC No. 2.62, and both instructions have overcome the same constitutional and due process challenges which defendant raises in this case.  (*People v. Saddler* (1979) 24 Cal.3d 671, 680-681 (*Saddler*); *Rodriguez*, supra, 170 Cal.App.4th at pp. 1066-1068; *People v. Lamer* (2003) 110 Cal.App.4th 1463, 1471 (*Lamer*).)  *Saddler* emphasized that CALJIC No. 2.62 cautions that a defendant's failure to deny or explain "does not create a presumption of guilt or by itself warrant an inference of guilt, nor does it relieve the prosecution of its burden of proving every essential element of the crime and the guilt of defendant beyond a reasonable doubt."  (*Saddler*, *supra*, 24 Cal.3d at p. 680.)  As explained in *Rodriguez*, similar cautionary language is included in CALCRIM No. 361.  (*Rodriguez*, *supra*, 170 Cal.App.4th at pp. 1066-1067.)

Defendant acknowledges *Saddler* but disagrees with the California Supreme Court's reasoning in that case and contends CALCRIM No. 361 violates his constitutional rights because it does not treat a testifying defendant the same as any other witness.  Both *Saddler* and *Rodriguez* rejected the similar argument that this instruction impermissibly singles out a defendant's testimony.  (*Saddler*, *supra*, 24 Cal.3d at pp. 680-681; *Rodriguez*, *supra*, 170 Cal.App.4th at p. 1067.)  Evidence Code section 413 "allows a trier of fact to consider a party's failure to explain or deny evidence, a principle expressed in CALCRIM No. 361.  This distinguishes a criminal defendant from the other trial witnesses, whether prosecution or defense."  (*Rodriguez*, *supra*, 170 Cal.App.4th at p. 1068, italics in original.)  We agree with the analysis in *Saddler* and *Rodriguez* that the instruction does not suffer from any constitutional infirmities.

Defendant next contends there was insufficient evidence to support CALCRIM No. 361 because he "explained or denied all incriminating evidence about which he was questioned," particularly the source of the cash, and he was not required to produce pay stubs to support his testimony about how much he was paid.  CALCRIM No. 361 is properly given when there are "facts or evidence in the prosecution's case within [the defendant's] knowledge which he did not explain or deny."  (*Saddler*, *supra*, 24 Cal.3d at p. 682.)  A contradiction between the testimony of a defendant and other witnesses does not constitute a failure to deny that justifies giving the instruction.  (*Ibid*.)  "'[T]he test for giving the instruction is not whether the defendant's testimony is believable. [The instruction] is unwarranted when a defendant explains or denies matters within his or her knowledge, no matter how improbable that explanation may appear.' [Citation.]" (*Lamer*, *supra*, 110 Cal.App.4th at p. 1469.)  However, if a defendant elects to testify at trial and there are "logical gaps" in his testimony, the jury may be instructed with CALCRIM No. 361.  (*People v. Redmond* (1981) 29 Cal.3d 904, 911.)

CALCRIM No. 361 was properly given in this case because defendant failed to explain the source of the cash found in his possession.  While defendant

claimed he had just been paid for his work as a farm laborer foreman and driver, he was unable to identify any of his various employers, where he worked, what communities he worked in, and where he drove the farm laborers. Defendant's cross-examination answers created logical gaps in his testimony, such that the jury could conclude that defendant failed to explain circumstances about which he knew or should have known.

Defendant cites to Lamer in support of his argument that CALCRIM No. 361 is a "dangerous" instruction and should not have been given in this case. In *Lamer*, however, the trial court gave CALCRIM No. 2.62 because the defendant did not explain the victim's motive for bringing molestation charges against him, even though the defendant was not asked to speculate about the matter. Lamer held the instruction was inappropriate because there was no evidence the defendant had facts or evidence in his knowledge as to his victim's state of mind. (*Lamer*, *supra*, 110 Cal.App.4th at pp. 1470-1471.) In contrast, the defendant in this case was asked to explain the source of the cash found in his pocket, a matter within his knowledge, and defendant was unable to identify his income sources.

Even assuming it was error to give CALCRIM No. 361, it is not reasonably probable that a result more favorable to the defendant would have occurred if the instruction had not been given. (*People v. Watson* (1956) 46 Cal.2d 818, 836; *Saddler*, *supra*, 24 Cal.3d at p. 683; *Lamer*, *supra*, 110 Cal.App.4th at pp. 1471-1472.) For example, *Saddler* held the trial court erroneously gave the instruction in that case because there was simply a "clear conflict" between the defendant's alibi and an eyewitnesses's testimony, and " a contradiction is not a failure to explain or deny." (*Saddler*, *supra*, 24 Cal.3d at pp. 682-683.) However, *Saddler* found the error was not prejudicial based upon the strength of one eyewitnesses's testimony. (*Id*. at pp. 683-684.)

The evidence in this case was "significantly stronger" than in Saddler. (See, e.g., *Lamer*, *supra*, 110 Cal.App.4th at p. 1473.) Officer Cortez encountered defendant in the same location where he arrested defendant several months earlier for methamphetamine sales. On this occasion, another person was standing nearby and shouted a warning that Cortez was approaching. While defendant claimed he just happened to stop in that front yard to urinate, Cortez found the bag of $20 methamphetamine bindles in the exact location where defendant had been bending over. Defendant was found in possession of $740, including seventeen $20 bills, the exact denominations for which each baggie of methamphetamine would have been sold.

Moreover, CALCRIM No. 361 "'does not direct the jury to draw an adverse inference. It applies only if the jury finds that the defendant failed to explain or deny evidence. It contains other portions favorable to the defense (suggesting when it would be unreasonable to draw the inference; and cautioning that the failure to deny or explain evidence does not create a presumption of guilt, or by itself warrant an inference of guilt, nor relieve the prosecution of the burden of proving every essential element of the crime beyond a reasonable doubt).'" (*Lamer*, *supra*, 110 Cal.App.4th at p. 1472.) Thus, even if the jury erroneously receives CALCRIM No. 361, the error is not prejudicial because "the text of the instruction itself tells the jury that it would be *unreasonable* to draw an adverse inference if the defendant lacks the knowledge needed to explain or deny the evidence against him." (*Lamer*, *supra*, 110 Cal.App.4th at p. 1472, italics in original.)

1    (Lopez, 2010 Cal.App. Unpub. LEXIS at *6-12.)

2          First, Petitioner has not shown that the appellate courts' finding that CALCRIM NO. 361

3    was constitutional was contrary to, or an unreasonable application, of clearly established Federal

4    law.  Petitioner has not pointed to a United States Supreme Court decision finding that a state

5    violates a defendant's due process right to a fair trial by allowing the jury to draw an adverse

6    inference from a testifying defendant's failure to explain or refute evidence that he can

7    reasonably be expected to.  In fact, the United States Supreme Court has stated that a testifying

8    defendant "may not stop short in his testimony by omitting and failing to explain incriminating

9    circumstances and events already in evidence in which he participated and concerning which he

10   is fully informed, without subjecting his silence to the inferences to be naturally drawn from it."

11   Caminetti v. United States, 242 U.S. 470, 494 (1917).  Thus, because there is no clearly

12   established law squarely addressing this issue, Petitioner cannot seek relief under § 2254.

13         Second, the appellate court reasonably found the instruction was supported by the

14   evidence presented at trial.  There was substantial evidence that when Officer Cortez approached

15   the front yard of a residence, he saw Petitioner bend over as if he was trying to conceal

16   something.  (RT 20-21.)  Petitioner walked over to the officer and consented to a search of his

17   person.  Petitioner had 740 dollars in cash (which included 17 20-dollar bills) and a cell phone.

18   (RT 21, 25, 29.)  The officer then went over to where Petitioner was bending down and found a

19   bag containing 12 individually wrapped baggies of methamphetamine approximately 20 dollars

20   in street value-the same as he had possessed in his prior conviction.  (RT 21-22, 29.)  Petitioner

21   told the officer he was selling drugs.  (RT 27.)

22         Petitioner testified at trial and claimed he was merely in the yard to urinate.  (RT 40.)

23   However, Petitioner did not explain the source of the cash found in his possession.  Although he

24   claimed he had just been paid for his work as a farm laborer foreman and driver, he could not

25   identify any employers, where he worked, what communities he worked in, or where he drove the

26   farm laborers.  (RT 43, 45, 50-51.)  The appellate court reasonably determined that Petitioner's

27   lack of such information created logical gaps in his testimony, and the jury could conclude that

28   he failed to explain circumstances about which he knew or should have known.  The appellate

court's factual determinations are presumed correct because Petitioner has failed to present any clear and convincing evidence to rebut such findings.

Third, there is no showing that CALCRIM No. 361 so infected the entire trial as to result in a denial of due process. The instruction did not tell the jury that it must draw an adverse inference; rather, it simply allowed the jury to consider his failure to explain or deny certain evidence when evaluating the evidence. Nor did the instruction alter the burden of proof. Indeed, the instruction specifically stated: (1) "any such failure is not enough by itself to prove guilt[;]" (2) that "[t]he People must still prove each element of the crime beyond a reasonable doubt[;]" and (3) "[I]f the defendant failed to explain or deny, it is up to you [the jury] to decide the meaning and importance of that failure." (CT at 126.)

Finally, even if the trial court erred in giving this instruction, Petitioner has not shown that such error had a substantial and injurious effect or influence on the jury's verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). Viewing the instructions as a whole, there is no arguable basis to find prejudice. The jury was instructed with CALCRIM 105 which stated:

> You alone must judge the credibility or believability of the witnesses. In deciding whether testimony is true and accurate, use your common sense and experience. The testimony of each witness must be judged by the same standard. You must set aside any bias or prejudice you may have, including any based on the witness's disability, gender, race, religion, ethnicity, sexual orientation, gender identity, age, national origin, or socioeconomic status, or . . . You may believe all, part, or none of any witness's testimony. Consider the testimony of each witness and decide how much of it you believe.
>
> In evaluating a witness's testimony, you may consider anything that reasonably tends to prove or disprove the truth or accuracy of that testimony. Among the factors that you may consider are:
>
> >How well could the witness see, hear, or otherwise perceive the things about which the witness testified?
>
> >How well was the witness able to remember and describe what happened?
>
> >Did the witness understand the questions and answer them directly?
>
> >Was the witness's testimony influenced by a factor such as bias or prejudice, a personal relationship with someone involved in the case, or a personal interest in how the case is decided?
>
> >What was the witness's attitude about the case or about testifying?

>Did the witness make a statement in the past that is consistent or inconsistent with his or her testimony?

>How reasonable is the testimony when you consider all the other evidence in the case?

>Did other evidence prove or disprove any fact about which the witness testified?

>Did the witness admit to being untruthful?

>What is the witness's character for truthfulness?

>Has the witness been convicted of a felony?

>Has the witness engaged in other conduct that reflects on his or her believability?

>Was the witness promised immunity or leniency in exchange for his or her testimony?

Do not automatically reject testimony just because of inconsistencies or conflicts.  Consider whether the differences are important or not.  People sometimes honestly forget things or make mistakes about what they remember.  Also, two people may witness the same event yet see or hear it differently.

If the evidence establishes that a witness's character for truthfulness has not been discussed among the people who know him or her, you may conclude from the lack of discussion that the witness's character for truthfulness is good.

If you do not believe a witness's testimony that he or she no longer remembers something, that testimony is inconsistent with the witness's earlier statement on that subject.

If you decide that a witness deliberately lied about something significant in this case, you should consider not believing anything that witness says.  Or, if you think the witness lied about some things, but told the truth about others, you may simply accept the part that you think is true and ignore the rest.

(CT 106-107.)

This instruction was re-stated in CALCRIM No. 226.  (CT 115-116.)  The court further instructed the jury that "If you determine there is a conflict in the evidence, you must decide what evidence, if any, to believe."  (CT 120.)  Given the totality of the instructions, including the language of CALCRIM 316 itself, there is no showing the instruction rendered Petitioner's trial fundamentally unfair.

IV.   Prosecutorial Misconduct

Petitioner contends the prosecutor committed misconduct during the trial by asking the

1  arresting officer and Petitioner to look the jurors in the eyes and say they were telling the truth,

2  and using her closing argument to assert that Petitioner was lying because he failed to do so.

3    A.    Exhaustion

4    Respondent initially argues that Petitioner failed to exhaust the state court remedies by

5  failing to present this claim to the California Supreme Court.  Respondent is correct.

6  Notwithstanding the lack of exhaustion, the claim fails on the merits.  See Cassett v. Stewart, 406

7  F.3d 614, 623-24 (9th Cir. 2005) (an unexhausted claim may be denied on merits if it is

8  "perfectly clear that the applicant does not raise a colorable federal claim.")

9    B.    Merits

10   The California Court of Appeal denied the claim in the last reasoned decision stating:

11        Defendant next contends the prosecutor committed prejudicial misconduct
     by asking the arresting officer and defendant to look the jurors in the eyes and say
12   they were telling the truth, and using her closing argument to assert that defendant
     was lying because he failed to do so.
13
     A. Background
14
          As set forth ante, the prosecutor extensively cross-examined defendant as
15   to his claim that he possessed $740 because he had just been paid.  Defendant was
     unable to identify his employers or the details and locations of the particular jobs
16   he performed.  The following exchange occurred at the conclusion of the
     prosecutor's cross-examination:
17
          "Q. Mr. Lopez, will you look at this jury and tell them that you did not
18   possess the methamphetamine that day to sell it.

19        "A. And he knows I didn't have it.  The officer knows I didn't have it.

20        "Q. Mr. Lopez, will you look at each member of this jury and tell them
     you did not possess it for sale?
21
          "A. What should I tell them?"
22
          The prosecutor called Officer Lopez in rebuttal to testify about the first
23   time he arrested defendant for methamphetamine sales, and the following
     exchange occurred:
24
          "Q. Have you told the truth during your entire testimony here during this
25   trial?

26        "A. Yes, I have.

27        "Q. Would you look at the jury and tell them that your entire testimony
     here during the pendency of this trial is truthful?
28

12

"A. Yes, I can.  I can look at every juror in the eye and tell you that everything in that [police] report is 100 percent true what happened that day."

The prosecutor referred to these exchanges in closing argument:

" . . . Officer Cortez testified, he looked each one of you in the eye and said that the defendant in this case told him he was selling drugs.  I asked the defendant to look at you twice and tell you that his testimony here is truthful, and he couldn't do it.  When you have two people that are telling different stories, you have to call on your experience to make that determination.  Some of you have kids.  Some of you have friends.  When you have two people who are telling you two different stories, you look at them and say, who am I dealing with, what is the motive to lie, you call them together, and you ask them questions to determine which, if any one of them, are telling the truth. [P] . . . [Y]ou heard from Officer Cortez.  He looked you in the eye.  There is only one person in this courtroom who couldn't do it, and I urge you to return a guilty verdict for him."

Defense counsel did not object to the prosecutor's argument but used closing argument to assert that defendant was in the wrong place at the wrong time, that the baggies of methamphetamine were found in an area with high drug activity, and Officer Cortez simply assumed defendant was connected with the baggies without searching Monroy, investigating the occupants of the duplex, or searching defendant's residence.

B. Analysis

"The applicable federal and state standards regarding prosecutorial misconduct are well established.  "'A prosecutor's ... intemperate behavior violates the federal Constitution when it comprises a pattern of conduct 'so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process.'"" [Citations.] Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves ""the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.""" [Citation.] As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion - - and on the same ground - -the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety. [Citation.] Additionally, when the claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable probability that the jury construed or applied any of the complained-of remarks in an objectionable fashion. [Citation.]" (*People v. Samayoa* (1997) 15 Cal.4th 795, 841.)

Defense counsel did not object to the prosecutor's questions or her closing argument and has thus waived his prosecutorial misconduct claims.  There is no evidence that an admonition would not have cured any purported harm, or that an objection or request for admonishment would have been futile.  (See *People v. Boyette* (2002) 29 Cal.4th 381, 432.)  There is no indication that the trial court repeatedly overruled valid objections or otherwise discouraged defense counsel from taking action.  (See, e.g., *People v. Hillhouse* (2002) 27 Cal.4th 469, 501-502.)

Defendant raises the alternative argument that defense counsel was ineffective for failing to object to the prosecutor's prejudicial questions and closing argument.  "In order to demonstrate ineffective assistance, a defendant

13

must first show counsel's performance was deficient because the representation fell below an objective standard of reasonableness under prevailing professional norms. [Citation.] Second, he must show prejudice flowing from counsel's performance or lack thereof.  Prejudice is shown when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome. [Citation.]" (*People v. Williams* (1997) 16 Cal.4th 153, 215.)  We note that the failure to object is considered a matter of trial tactics "as to which we will not exercise judicial hindsight. [Citation.] (*People v. Kelly* (1992) 1 Cal.4th 495, 520.)  In any event, we will address the prosecutorial misconduct claim on the merits to the extent necessary to decide the ineffective assistance claim.  (*People v. Ochoa* (1998) 19 Cal.4th 353, 431.)

Defendant argues the cumulative effect of the prosecutor's questions and closing argument allowed "the prosecutor and police officer to invade the jury's role in determining credibility."  Defendant is correct that it is the exclusive province of the trier of fact to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends.  (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)  The prosecutor's questions in this case, however, "were designed merely to highlight the discrepancies between defendant's testimony and that of the witnesses."  (*People v. Guerra* (2006) 37 Cal.4th 1067, 1126.)  While the prosecutor would have been well-advised to refrain from the trial tactic of importuning witnesses, the questions did not call upon defendant and Cortez to characterize each other as liars.  In addition, the jury was instructed with CALCRIM No. 105, that it was the sole judge of a witness's believability. (*People v. Guerra, supra*, 37 Cal.4th at p. 1126.)

As for the prosecutor's references to these exchanges in closing argument, "[t]he general rule is that improper vouching for the strength of the prosecution's case "involves an attempt to bolster a witness by reference to facts outside the record." [Citation.] Thus, it is misconduct for prosecutors to vouch for the strength of their cases by invoking their personal prestige, reputation, or depth of experience, or the prestige or reputation of their office, in support of it. [Citations.] Specifically, a prosecutor's reference to his or her own experience, comparing a defendant's case negatively to others the prosecutor knows about or has tried, is improper. [Citation.] Nor may prosecutors offer their personal opinions when they are based solely on their experience or on other facts outside the record. [Citations.]" (*People v. Huggins* (2006) 38 Cal.4th 175, 206-207.) However, the prosecutor does not commit misconduct if he or she asks "the jury to believe the prosecution's version of events as drawn from the evidence. Closing argument in a criminal trial is nothing more than a request, albeit usually lengthy and presented in narrative form, to believe each party's interpretation, proved or logically inferred from the evidence, of the events that led to the trial.  It is not misconduct for a party to make explicit what is implicit in every closing argument . . . ."  (*Id.* at p. 207.)

"Argument may be vigorous and may include opprobrious epithets reasonably warranted by the evidence. [Citations.]" (*People v. Edelbacher* (1989) 47 Cal.3d 983, 1030, disapproved on another ground in *People v. Loyd* (2002) 27 Cal.4th 997, 1007, fn. 12.)  It is also permissible argument for the prosecutor to call the defendant a liar.  (*People v. Boyette, supra*, 29 Cal.4th at p. 433.) "Referring to the testimony and out-of-court statements of a defendant as 'lies' is an acceptable practice so long as the prosecutor argues inferences based on evidence rather than the prosecutor's personal belief resulting from personal

experience or from evidence outside the record. [Citations.]" (*People v. Pinholster* (1992) 1 Cal.4th 865, 948.)  The prosecutor did not commit misconduct in closing argument and defense counsel was not ineffective for failing to object.  (*People v. Huggins*, *supra*, 38 Cal.4th at p. 207.)

(Lopez, 2010 Cal.App. Unpub. LEXIS at *12-20.)

A habeas petition will be granted for prosecutorial misconduct only when the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 171, 106 S.Ct. 2464 (1986) (*quoting* Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871 (1974)); see Bonin v. Calderon, 59 F.3d 815, 843 (9th Cir. 1995).  To constitute a due process violation, the prosecutorial misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial." Greer v. Miller, 485 U.S. 756, 765, 107 S.Ct. 3102, 3109 (1987) (*quoting* United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375 (1985)). Under this standard, a petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial - i.e., that absent the alleged impropriety, the verdict probably would have been different.

Here, when the prosecutor asked the witness to look at the jurors during his key testimony, it was merely a way to demonstrate conflicts between the witnesses and to consider the demeanor when determining the veracity of the witnesses.  Given that this case centered on the testimony of conflicting witnesses, the prosecutor is entitled to argue that the opposing side is not telling the truth.  See United States v. Trevino, 419 F.3d 896, 902 (9th Cir. 2005).

Furthermore, Petitioner has not shown the state appellate court's finding that the prosecutor did not commit improper prosecutorial vouching during closing argument was an unreasonable application of federal law.  The appellate court reasonably determined that the prosecutor did not personally assure the veracity of the prosecution witnesses, nor did the prosecutor suggest there was other outside evidence not presented at trial that supported the case. Consequently, there has been no showing the prosecutor committed misconduct, and the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

V.    Certificate of Appealability

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 123 S.Ct. 1029, 1039 (2003).  The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c) (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>
>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>>
>> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 123 S.Ct. at 1034; Slack v. McDaniel, 529 U.S. 473, 484 (2000).  While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 123 S.Ct. at 1040.

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further.  Petitioner has not made the required substantial

showing of the denial of a constitutional right.  Accordingly, the Court hereby declines to issue a certificate of appealability.

<u>ORDER</u>

Based on the foregoing, it is HEREBY ORDERED that:

1.      The instant petition for writ of habeas corpus is DENIED;

2.      The Clerk of Court is directed to enter judgment in favor of Respondent; and

3.      The court declines to issue a Certificate of Appealability.


IT IS SO ORDERED.

Dated:   **May 6, 2011**                  **/s/ Dennis L. Beck**
                                    UNITED STATES MAGISTRATE JUDGE

17